292 S.E.2d 621

**Velma PAPENHAUS, et al.**

v.

**William Robert COMBS.**

**No. 15320.**

Supreme Court of Appeals of
West Virginia.

June 22, 1982.

---

L. Alvin Hunt, Preiser & Wilson, Charleston, for appellants.

J. Stephen Max, Max & Broglio, Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon an appeal by the appellants, Velma Papenhaus, et al., from the final order of the Circuit Court of Kanawha County, West Virginia, by which order, entered on November 14, 1980, the circuit court refused to set aside a jury verdict returned in favor of the appellee, William Robert Combs. The appellants assert that they are the sole beneficiaries of the estate of E. Blanche Rose and that the appellee should take nothing from that estate. This Court has

before it the petition for appeal, all matters of record and the briefs filed by counsel.

The record indicates that the decedent, E. Blanche Rose, married the appellee on October 31, 1976, in Putnam County, West Virginia. At that time the decedent was 79 years of age and the appellee was 70 years of age. They lived together in Putnam County and Kanawha County until June, 1977, at which time they separated.

In June, 1977, the decedent talked with an attorney, Stephen Meyer, concerning a divorce from the appellee. On August 30, 1977, Meyer filed a divorce action on behalf of the decedent, and a hearing was scheduled before a divorce commissioner.

Prior to the hearing before the divorce commissioner, the decedent on November 4, 1977, fell and broke her hip and was hospitalized. The decedent remained in the hospital until December 27, 1977, at which time she went to the home of her nephew, appellant Albert Rose, where on January 13, 1978, she died. On January 30, 1979, the appellee was appointed in Kanawha County as administrator of the decedent's estate.

In February, 1978, an action was filed in Kanawha County by the appellants against the appellee. In that action, the appellants asserted that the appellee was entitled to nothing from the decedent's estate.

Specifically, the appellants' complaint asserted that pursuant to a holographic will dated June 1, 1977, the decedent left all her real and personal property to the appellants, to the exclusion of the appellee. The appellants further asserted that the marriage between the decedent and the appellee was void. The appellants then filed an amended complaint in which they asserted that pursuant to a subsequent will of the decedent, executed on August 16, 1977, they were the sole beneficiaries of the dece-

dent's estate. The amended complaint asserted that the August 16, 1977, will was admitted to probate in Kanawha County in March, 1978, and that appellant Velma Papenhaus was named as executrix. Pursuant to the August 16, 1977, will the appellee was to receive only $100 from the decedent's estate.

Furthermore, in the amended complaint the appellants asserted that because of the appellee's wrongful conduct toward the decedent, the appellee was entitled to nothing from the decedent's estate. That assertion was based upon the provisions of *W. Va. Code*, 43–1–19 [1931], which states as follows:

> If a husband or wife of his or her own free will leave his or her spouse and live in adultery and be not afterwards reconciled to, and live with, such spouse, or if a husband or wife shall voluntarily leave or abandon his or her spouse without such cause as would entitle such husband or wife to a divorce from the bond of matrimony or from bed and board, and without such cause and of his or her own free will be living separate and apart from such spouse at the time of the latter's death, such husband or wife shall be barred of dower in the estate of such spouse.

Finally, in the amended complaint the appellants again asserted that the marriage between the decedent and the appellee was void.

Trial began in the circuit court on March 17, 1980. On March 21, 1980, the jury returned a two-part verdict finding (1) that the will executed on August 16, 1977, was not the will of the decedent, and (2) that the appellee was not guilty of misconduct toward the decedent within the meaning of *W. Va. Code*, 43–1–19 [1931].[1] By order en-

---

1. Upon the basis of the jury verdict, the circuit court by order dated March 31, 1980, held as follows:

    1. The paper writing filed in evidence as Plaintiffs' Exhibit No. 2, purporting to be the Last Will and Testament of E. Blanche Rose (also known as E. Blanche Rose Combs), the original of which is on file in the office of the Clerk of the County Commission of Kanawha

County, West Virginia, is not the Last Will and Testament of E. Blanche Rose (also known as E. Blanche Rose Combs); and

    2. The Defendant, William Robert Combs, is not in violation of Chapter 43, Article 1, Section 19, of the Code of West Virginia of 1931, as amended as would prevent him from inheriting from E. Blanche Rose (also known as E. Blanche Rose Combs).

tered on November 14, 1980, the circuit court refused to set aside the verdict of the jury.

In their petition for appeal, the appellants contend that the circuit court committed error in refusing to admit into evidence the oral and written declarations of the decedent to her attorney, Stephen Meyer, which declarations indicated negative feelings of the decedent toward the appellee. The appellants sought to establish by that evidence that the decedent intended to disinherit the appellee. Similarly, the appellants contend that the circuit court committed error in refusing to admit into evidence the declarations of the decedent to the attesting witnesses to the alleged will executed on August 16, 1977. Those attesting witnesses were Judith E. Perry and Margaret Shirkey.[2] Finally, the appellants contend that the circuit court committed error in instructing the jury that they were entitled to give "peculiar weight" to the testimony of an expert witness.

## I

At trial, the appellants asserted that the August 16, 1977, will was genuine and that they were beneficiaries under that will. They further asserted that the decedent intended to leave nothing to the appellee. The appellee, however, asserted that he had a reconciliation with the decedent shortly before her death and that the August 16, 1977, will was a forgery. Whether that will was, in fact, genuine was a primary issue at trial.

The trial court refused to permit Stephen Meyer, the decedent's attorney, to testify about his conversations with the decedent concerning her proposed divorce from the appellee. Nor was Meyer permitted to testify from the decedent's written notes concerning that divorce. Similarly, Judith E. Perry and Margaret Shirkey, the attesting witnesses to the August 16, 1977, will,

were not permitted to testify about their conversations with the decedent at the time that will was executed. The appellants contend that the exclusion of such testimony from Meyer, Perry and Shirkey was error. We agree.

That testimony was excluded by the trial court upon the basis of *W. Va. Code,* 57-3-1 [1937], commonly referred to as the "Dead Man's Statute." That statute provides as follows:

No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic. But this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf, nor as to which the testimony of such deceased person or lunatic shall be given in evidence: Provided, however, that where an action is brought for causing the death of any person by any wrongful act, neglect or default under article seven, chapter fifty-five of this Code, the person sued, or the servant, agent or employee of any firm or corporation sued, shall have the right to give evidence in any

This appeal involves only evidentiary questions. We do not address the merits of the complaint.

**2.** At trial, the testimony of attorney, Stephen Meyer, was essentially limited to the fact that he instituted a divorce action on behalf of the dece-

dent against the appellee. Moreover, the attesting witnesses were only permitted to testify that they personally observed the decedent sign the August 16, 1977, will and that the decedent was mentally competent at that time.

case in which he or it is sued, but he may not give evidence of any conversation with the deceased.

The appellee relies upon the fact that the appellants failed at trial after the exclusion of the testimony in question of Meyer, Perry and Shirkey, to make an offer upon the record of the character of that excluded testimony. In syllabus point 1 in *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980), we held as follows:

> If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal.

*See also* Syl. pt. 5, *Delmar Oil Co. v. Bartlett*, 62 W.Va. 700, 59 S.E. 634 (1907). Furthermore, citing syllabus point 5 in *Maxwell v. Kent*, 49 W.Va. 542, 39 S.E. 174 (1901), we recently held as follows in the syllabus in *Crawford v. Roeder*, 169 W.Va. 158, 286 S.E.2d 273 (1982): "When evidence is excluded, and the action of the court in excluding it is relied upon in the appellate court, it must appear on the record that the evidence rejected was or would have been relevant, material, and important, to make its rejection available as a ground of error."

█ In the action before this Court, the appellants, with respect to the excluded testimony of Meyer, Perry and Shirkey, failed to make an offer upon the record of the character of that excluded testimony.

As indicated by the above West Virginia cases, such an offer should have been made. However, the nature of the excluded testimony may clearly be discerned from the record. It is obvious from an examination of the trial transcript that the excluded testimony of attorney Meyer related to alleged negative feelings of the decedent toward the appellee in the context of the proposed divorce, and the excluded testimony of Perry and Shirkey related to the execution of the August 16, 1977, will, the genuineness of which will was a primary issue at trial. This Court will consider, therefore, the assertion of the appellants that the exclusion of such testimony of Meyer, Perry and Shirkey was error.[3]

█ It is undisputed in the record that Meyer, Perry and Shirkey are not parties to this action. Nor do they have any interest in the controversy. Consequently, the trial court committed error in applying *W.Va.Code*, 57–3–1 [1937], to exclude their testimony. A witness who is not a party to an action or has no interest in that action, is not precluded by *W.Va.Code*, 57–3–1 [1937], commonly referred to as the "Dead Man's Statute," from testifying with regard to a personal transaction or communication between such witness and a decedent. Syl. pt. 1, *Keatley v. Hanna Chevrolet Company*, 121 W.Va. 669, 6 S.E.2d 1 (1939); Syl. pt. 4, *Hollen v. Crim & Peck*, 62 W.Va. 451, 59 S.E. 172 (1907).

The excluded testimony of Meyer, Perry and Shirkey was relevant and material to the action of the appellants. As this Court held in syllabus point 1 in *Maxwell v. Ford*, 103 W.Va. 124, 136 S.E. 777 (1927): "Upon

---

**3.** In *Studio Film Service, Inc. v. Filmercial Productions, Inc.*, 218 Cal.App.2d 786, 32 Cal.Rptr. 565 (1963), a California appellate court held that the trial court committed error in excluding certain evidence relating to the meaning of an agreement to terminate a joint venture. Specifically, the trial court concluded that the agreement was unambiguous, and, therefore, parol evidence as to its meaning was inadmissible. The appellate court, however, held that the agreement was ambiguous and that the parol evidence was admissible. The defendant sought to admit that parol evidence at trial and, subsequent to the rejection of that evidence by the trial court, made an "offer of proof." 32 Cal. Rptr. at 566. As the appellate court observed:

> Defendant's offer of proof, though lacking in particulars, was sufficient to inform the court of the type of testimony which defendant proposed to elicit through witnesses who were then available. 'Where an entire class of evidence has been declared inadmissible or the trial court has clearly intimated it will receive no evidence of a particular class or upon a particular issue, an offer of proof is not a prerequisite to raising the question on appeal, and an offer, if made, may be broad and general.' (citation omitted.)

32 Cal.Rptr. at 567.

an issue of *devisavit vel non*, evidence of declarations of the deceased may be received in connection with direct testimony supporting or discrediting the testamentary paper." In *Maxwell* this Court stated as follows:

We therefore hold that in connection with the testimony of witnesses as to the handwriting of the document, evidence is admissible of [the decedent's] declared feelings toward both the proponent and the contestants, as well as evidence of a state of affairs which would tend to render it probable or improbable that the paper is valid.

103 W.Va. at 128, 136 S.E. 777.

■ For the reasons stated above, we hold that the trial court committed error in excluding the testimony in question of Meyer, Perry and Shirkey.

## II

During the trial, the judge instructed the jury that it was for the jury to determine the weight to be given the testimony of an expert witness. The judge also instructed the jury that in considering the testimony of an expert witness, such matters as the expert's training and expertise were to be considered.[4] Nevertheless, by way of defendant's (appellee's) instruction no. 3, as amended, the judge further instructed the jury as follows:

The Court instructs the jury that a person who by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his or her opinion as to any such matter in which he or she is versed and which is material to the case, and that you are entitled to give such testimony *peculiar weight.* (emphasis added.)

The appellants contend that the circuit court committed error in instructing the jury that they were entitled to give "peculiar weight" to the testimony of an expert witness. We agree that the giving of that instruction was error. However, we find that error harmless under the circumstances of this action.

During the trial, the appellee asserted that the signature of the decedent upon the August 16, 1977, will was a forgery. In support of that assertion, the appellee submitted the testimony of Kenneth W. Blake, a handwriting expert. In response, the appellants submitted the testimony of Thelma Cline, also a handwriting expert. Ms. Cline testified that the signature of the decedent upon the will was genuine.[5] Furthermore, the appellants submitted the tes-

---

4. Plaintiffs' (appellants') instruction no. 6 given to the jury stated as follows:

There has been introduced the testimony of certain witnesses who purport to be skilled in their line of endeavor. Such witnesses are known in law as expert witnesses. An expert witness is one who is skilled in any certain art, business, or profession, possessed of peculiar knowledge acquired by study, observation, and practice.

You are instructed that you may consider the testimony of these witnesses, and give it such weight and value as you think it should have, but the weight and value to be given their testimony is for you to determine. You are not required to surrender your own judgment to that of any person testifying as an expert, or to give controlling effect to the opinion of an expert, for the testimony of an expert, like that of any other witness, is to be received by you and given such weight and value as you deem it is entitled to receive.

Defendant's (appellee's) instruction no. 4, as amended, given to the jury stated as follows:

The Court instructs the jury that in weighing the evidence of expert witnesses you are

to take into consideration their education, expertise, training and verse, the weight and process of the reasoning by which they supported their respective opinions; their relative opportunities for study or observation of the matters about which they testified, and any other matters which serve to illuminate their statements.

5. At trial the appellee's expert witness, Kenneth W. Blake, stated as follows:

[M]y opinion—conclusion was reached that the signatures, number 1 and 2, which are the questioned signatures are not the writing of the same person who wrote signatures 3 thru 9. In my opinion they are simulated forgeries, that is someone attempted to copy the writing of E. Blanche Rose.

On the other hand, the appellants' expert witness, Thelma Cline, stated as follows: "The signatures on the knowns and the signatures on the will that is the subject of question, it is my opinion they were written by one and the same person, each, E. Blanche Rose."

timony of attesting witnesses Judith E. Perry and Margaret Shirkey who stated that they personally observed the decedent sign the will.

■ In *Webb v. The Chesapeake & Ohio Railway Company*, 105 W.Va. 555, 144 S.E. 100 (1928), we held in syllabus point 2 as follows:

> The testimony of expert witnesses on an issue is not exclusive, and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all witnesses, experts and otherwise; and the same rule applies as to the weight and credibility of such testimony.

*See also Middle-West Concrete Forming and Equipment Company v. General Insurance Company of America*, 165 W.Va. 280, 267 S.E.2d 742, 747 (1980), and syllabus point 8, *Ward v. Brown*, 53 W.Va. 227, 44 S.E. 488 (1903).

In *In re Skoog's Estate*, 373 Mich. 27, 127 N.W.2d 888 (1964), an action involving a will contest, the court stated as follows: "The weight to be given testimony of a handwriting expert is for the trier of fact." 373 Mich. at 29, 127 N.W.2d at 889.[6]

■ Nevertheless, we are of the opinion that the giving of defendant's (appellee's) instruction no. 3, as amended, was harmless error. At trial, an expert witness testified on behalf of the appellee and another such witness testified on behalf of the appellants. Upon a careful examination of the record, we are unable to conclude that prejudice resulted to the appellant as a result of the instruction in question.

■ With respect to the testimony of Judith E. Perry and Margaret Shirkey, the attesting witnesses to the August 16, 1977, will, it should be noted that their testimony, rather than the testimony of the expert witnesses, was entitled to peculiar weight. As we held in syllabus point 4 in *Frye v. Norton*, 148 W.Va. 500, 135 S.E.2d 603 (1964), and syllabus point 2 in *Stewart v. Lyons*, 54 W.Va. 665, 47 S.E. 442 (1903): "Evidence of witnesses present at the execution of a will is entitled to peculiar weight, and especially is this the case with the attesting witnesses." *See also* 3 Bowe and Parker *Page on the Law of Wills* § 29.31 (1961).

The final order of the Circuit Court of Kanawha County entered on November 14, 1980, is hereby reversed, and this action is remanded to the circuit court for a new trial.

Reversed and remanded.

---

6. In *Maxwell v. Ford, supra*, this Court stated as follows:

> The only issue in the case is whether the instrument in question is the true will of [the decedent]. As this paper is not witnessed in manner prescribed by statute, its validity will depend upon whether it is written wholly in the handwriting of the decedent. The determination of this fact cannot be made to depend solely upon the opinions of witnesses or the opinion of the court upon a comparison of the document with other papers in the admitted handwriting of [the decedent]. Court af-

ter court has deplored the unsatisfactory nature of testimony as to the handwriting of a challenged paper; the reason being that witnesses of equal honesty and character and with equal means of information, testify both for and against its genuineness. When the validity of an instrument is difficult to determine from testimony as to the handwriting as in this case, every collateral fact and circumstance which aids materially in solving the problem, should be considered. 103 W.Va. at 127, 136 S.E. 777.